Chisum v. Campagna, 2017 NCBC 100.

STATE OF NORTH CAROLINA

COUNTY OF NEW HANOVER

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
16 CVS 2419

DENNIS D. CHISUM, individually and
derivatively on behalf of JUDGES
ROAD INDUSTRIAL PARK, LLC;
CAROLINA COAST HOLDINGS, LLC;
AND PARKWAY BUSINESS PARK,
LLC,

Plaintiff,

v.

ROCCO J. CAMPAGNA; RICHARD J.
CAMPAGNA; JUDGES ROAD
INDUSTRIAL PARK, LLC;
CAROLINA COAST HOLDINGS, LLC;
and PARKWAY BUSINESS PARK,
LLC,

Defendants.

**OPINION AND ORDER ON
CAMPAGNA DEFENDANTS'
MOTION TO DISMISS**

THIS MATTER comes before the Court on Defendants' Motion to Dismiss

(Rules 12(b)(6) and 9(b)) ("Motion"). (ECF No. 49.2.) Defendants seek dismissal of the

Plaintiff's First, Second, Eleventh, Thirteenth, and Fourteenth claims for relief

contained in the Amended Complaint. (ECF No. 28.)

THE COURT, having considered the Motion, the briefs and exhibits filed in

support of and in opposition to the Motion, the arguments of counsel at the hearing,

and other appropriate matters of record, concludes that the Motion should be

GRANTED, in part, and DENIED, in part, for the reasons set forth below.

> *Whitfield Bryson & Mason LLP, by Matthew E. Lee, Esq. and Jeremy R.*
> *Williams, Esq. and Sigmon Law, PLLC, by Mark R. Sigmon, Esq. for Plaintiff*
> *Dennis D. Chisum.*

*Shipman & Wright, LLP, by Gregory M. Katzman, Esq., Cory W. Reiss, Esq., Gary K. Shipman, Esq. and James T. Moore, Esq. for Defendants Rocco and Richard Campagna.*

McGuire, Judge.

## FACTS AND PROCEDURAL BACKGROUND

1.      The Court previously set out the procedural background of this matter in its Opinion and Order on Cross-Motions for Partial Summary Judgment, entered on July 20, 2017 (ECF No. 138; *Chisum v. Campagna*, 2017 NCBC LEXIS 62, *3–5 (N.C. Super. Ct. July 20, 2017).), and herein states only those procedural facts necessary to an understanding of the Motion.

2.      The Court does not make findings of fact on motions to dismiss under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure. N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) (hereinafter the Rules of Civil Procedure will be referred to as "Rule(s)" and the General Statutes will be referred to as "G.S."). The Court only recites those facts included in the complaint that are relevant to the Court's determination of the Motion. *See, e.g., Concrete Serv. Corp. v. Inv'rs Grp., Inc.*, 79 N.C. App. 678, 681, 340 S.E.2d 755, 758 (1986). The Court also may consider documents which are the subject of the plaintiff's complaint and to which the complaint specifically refers, even when such documents are submitted by the defendant. *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60, 554 S.E.2d 840, 847 (2001).

3.      This action arises out of a dispute regarding Plaintiff Dennis D. Chisum's ("Plaintiff") ownership interest in three limited liability companies ("LLC"): Judges Road Industrial Park, LLC ("Judges Road"), Carolina Coast Holdings, LLC ("CCH"), and Parkway Business Park, LLC ("Parkway") (hereinafter, these three

LLCs will be collectively referred to as "the Chisum/Campagna LLCs"). Plaintiff and Defendants Rocco Campagna ("Rocco") and Richard Campagna ("Richard") (collectively, "the Campagnas") formed the Chisum/Campagna LLCs in the 1990s to develop commercial real estate in and around Wilmington, North Carolina. Plaintiff is a member, but not a manager, of each of the Chisum/Campagna LLCs. Plaintiff alleges that Rocco "and/or" Richard Campagna "served as managers of each of the Chisum/Campagna LLCs" at all times relevant to this matter. (ECF No. 28 at ¶¶ 12, 69.)

4. Plaintiff and the Campagnas entered into written Operating Agreements for each of the Chisum/Campagna LLCs. (Judges Road Op. Ag., ECF No. 28, Ex. A; CCH Op. Ag., ECF No. 28, Ex. B; Parkway Op. Ag., ECF No. 28, Ex. C.) The Operating Agreements for Judges Road and CCH give the managers of those LLCs authority to request that members make contributions of additional capital beyond their initial contributions ("capital call"). (ECF No. 28, Ex. A at § 8.1(b); ECF No. 28, Ex. B at § 8.1(b).) A capital call initiated by the managers must subsequently be approved by the majority of the members. (*Id.*) The Operating Agreement for Parkway does not provide for managers to request a capital call, but instead provides that "a majority of the Members . . . may request that the Members make additional contributions of capital to the Company." (ECF No. 28, Ex. C at § 7.1(b).)

5. The Operating Agreement for Judges Road provides that when a member fails to pay a capital call (hereinafter, "non-contributing member"), and another member (hereinafter, "contributing member") elects to make the payment for

the non-contributing member, the contributing member "purchase[s] . . . additional capital ownership," and Judges Road credits the contributing member with one additional Capital Unit for each $1,000.00 contributed. (ECF No. 28, Ex. A at § 8.1(b).) This, in turn, increases the number of Capital Units held by the contributing member, and the total number of issued and outstanding Capital Units in Judges Road. Each member's adjusted Membership Interest is then determined by dividing the number of Capital Units held by the member by the new aggregate number of outstanding Capital Units held by all members. (ECF No. 28, Ex. A at § 8.1(b).) As a result, the contributing member's Membership Interest proportionally increases, and the non-contributing member's Membership Interest proportionally decreases. "Section 8.1(b) of the Operating Agreement of Judges Road . . . does not permit a member's Membership Interest to be diluted to zero, or extinguished, by failure to contribute capital in response to a capital call." *Chisum v. Campagna*, 2017 NCBC LEXIS 62, at *28.

6.      Beginning in 2007 and continuing into 2012, Richard, or "the Campagnas,"[1] directed unnecessary "sham" capital calls for the Chisum/Campagna LLCs. (ECF No. 28 at ¶¶ 26–29, 35.) Plaintiff alleges that there was no legitimate purpose for the capital calls. (ECF No. 28 at ¶ 29.) Richard "knew [Plaintiff] would not be able to meet the demand for funds." (ECF No. 28 at ¶ 28.) Plaintiff alleges that the purpose of the capital calls was to diminish, and eventually eliminate Plaintiff's

---

[1] In some instances, Plaintiff claims that Richard directed the capital calls individually. Elsewhere in the Amended Complaint, Plaintiff alleges that "the Campagnas" directed the capital calls together. (ECF No. 28 at ¶¶ 51, 56, 71(a), 112, 143, 150, 151.)

ownership interest in the Chisum/Campagna LLCs. (ECF No. 28 at ¶¶ 30–35, 51, 56, 71(a), 112, 143, 150, 151.) Plaintiff alleges that an unspecified number of these "sham" capital calls occurred: "[i]n or around 2007" (ECF No. 28 at ¶ 26); on October 4, 2010 (ECF No. 28 at ¶ 56); and in July 2012. (ECF No. 28 at ¶¶ 47, 51.)

7.      Plaintiff did not provide the funds required by the capital calls, and in lieu thereof assigned percentages of his ownership interest to the Campagnas in various installments. (ECF No. 28 at ¶¶ 27, 32.) As a result of Plaintiff's assignments, Plaintiff's interest in each of the Chisum/Campagna LLCs was diminished as follows:

   a. Judges Road: from 33.3% ownership to 25.333%, and then later to 18.884%. (ECF No. 28 at ¶ 33(a).)

   b. CCH: from 33.333% ownership to 16.667%. (ECF No. 28 at ¶ 33(b).)

   c. Parkway: from 16.667% ownership to 8.34%. (ECF No. 28 at ¶ 33(c).)

8.      In connection with the capital calls, the Campagnas "specifically represented to [Plaintiff] that the capital calls . . . were necessary for the operation of the Chisum/Campagna LLCs," (ECF No. 28 at ¶ 129), and "fraudulently concealed and misrepresented information that they had a duty to disclose." (ECF No. 28 at ¶ 32.) Plaintiff does not allege that he asked to inspect the books and records of the Chisum/Campagna LLCs in response to the capital calls, or that he was prevented from discovering that the capital calls were unnecessary to the operation of the Chisum/Campagna LLCs. Plaintiff alleges that he did not discover the nature of the Campagnas' conduct until March of 2016 when Plaintiff learned that the Campagnas had sold a mini-storage facility owned by Judges Road. (ECF No. 28 at ¶¶ 38, 43.)

9.     In July 2012, the Campagnas held a meeting of the members of the Chisum/Campagna LLCs. (ECF No. 28 at ¶ 47, Ex E.) Plaintiff did not receive notice of the meeting. (ECF No. 28 at ¶ 47.) At the meeting, the Campagnas purported to amend section 8.1(b) of the Operating Agreement for Judges Road[2] to permit a member's interest to be "diluted" to 0% and extinguished if the member failed to contribute in response to a capital call. (ECF No. 28 at ¶¶ 49–50, Ex. E.) Plaintiff did not execute the amendment in writing as required by the Operating Agreement, and thus the "proposed amendment was invalid." (ECF No. 28 at ¶ 48.)

10.     Nevertheless, the Campagnas "began conducting themselves and the companies as if the proposed amendment[ ] [was] in force." (ECF No. 28 at ¶ 48.) The Campagnas made capital calls and "supposedly exercised their rights under the proposed amendment[ ] to dilute [Plaintiff] out of the Chisum/Campagna LLCs." (ECF No. 28 at ¶ 51.)

11.     Plaintiff also alleges that the Campagnas have improperly:

a.     Sold assets belonging to the Chisum/Campagna LLCs, including a large mini-storage facility owned by Judges Road, without Plaintiff's knowledge or consent, and have diverted the proceeds from the sales to themselves or to LLCs that they controlled (ECF No. 28 at ¶¶ 38–39, 46, and 65.);

---

[2] Plaintiff alleges that this meeting was for the purpose of amending the Operating Agreements of all of the Chisum/Campagna LLCs, (ECF No. 28 at ¶ 47) but the factual allegations only reference a meeting to amend the Operating Agreement of Judges Road. (ECF No. 28, Ex. E.)

b. Purchased residential and commercial real estate for the Chisum/Campagna LLCs to benefit themselves (ECF No. 28 at ¶ 44.);

c. "[F]unneled money and misappropriated [unspecified] corporate opportunities from . . . the Chisum/Campagna LLCs to" themselves and to LLCs owned exclusively by the Campagnas (ECF No. 28 at ¶ 62.); and

d. Charged management fees to the Chisum/Campagna LLCs and directed the Chisum/Campagna LLCs to reimburse their personal fuel, phone, and other costs. (ECF No. 28 at ¶ 64.)

12. Plaintiff made a written demand on the Chisum/Campagna LLCs to take suitable action to address the alleged breaches of fiduciary duty, but the LLCs did not respond. (ECF No. 28 at ¶ 67.) Plaintiff subsequently filed this lawsuit. The Amended Complaint states claims against the Campagnas and the LLCs for, *inter alia*: breach of fiduciary duty; constructive fraud; civil conspiracy; conversion; fraud in the inducement; failure to pay distributions; unjust enrichment; unfair and deceptive trade practices; declaratory judgment; and judicial dissolution. (ECF No. 28.)

13. On March 10, 2017, Defendants filed the Motion and a Memorandum of Law in Support of the Motion. (ECF No. 49.1.) The Motion seeks dismissal of Plaintiff's claims for breach of fiduciary duty (First Claim for Relief), constructive fraud (Second Claim for Relief), fraud in the inducement (Eleventh Claim for Relief),

unjust enrichment (Thirteenth Claim for Relief), and unfair and deceptive trade practices (Fourteenth Claim for Relief).

14. On April 3, 2017, Plaintiff filed his Brief in Opposition to the Motion to Dismiss. (ECF No. 88.) On April 12, 2017, the Campagna Defendants filed their Reply Brief in Support of the Motion. (ECF No. 99.) On August 1, 2017, the Court held a Hearing on the Motion. The Motion is now ripe for determination.

ANALYSIS

15. Plaintiff has moved to dismiss pursuant to Rules 12(b)(6) and 9(b), but not pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction. Nevertheless, the Court must always consider the question of whether it has subject matter jurisdiction over a matter, and may properly raise such issue on its own. *E.g.*, *Dale v. Lattimore*, 12 N.C. App. 348, 352, 183 S.E.2d 417, 419 (1971) ("Unquestionably lack of jurisdiction of the subject matter may always be raised by a party, or the court may raise such defect on its own initiative."), *cert. denied*, 279 N.C. 619, 184 S.E.2d 113 (1971).

16. In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court's inquiry is "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987). Our appellate courts frequently reaffirm that North Carolina is a notice pleading state. *See, e.g., Feltman v. City of Wilson*, 238 N.C. App. 246, 252, 767 S.E.2d 615, 620 (2014) (quoting *Wake Cty. v. Hotels.com,*

*L.P.*, 235 N.C. App. 633, 646, 762 S.E.2d 477, 486 (2014)). "Under notice pleading, a statement of claim is adequate if it gives sufficient notice of the claim asserted to enable the adverse party to answer and prepare for trial, to allow for the application of the doctrine of res judicata, and to show the type of case brought." *Id* (internal quotation marks omitted).

17.     Dismissal of a claim pursuant to Rule 12(b)(6) is proper "(1) when the complaint on its face reveals that no law supports plaintiff's claim; (2) when the complaint reveals on its face the absence of fact sufficient to make a good claim; [or] (3) when some fact disclosed in the complaint necessarily defeats the plaintiff's claim." *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985). Otherwise, "a complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." *Sutton v. Duke*, 277 N.C. 94, 103, 176 S.E.2d 161, 166 (1970) (emphasis omitted). The Court construes the complaint liberally and accepts all allegations as true. *Laster v. Francis*, 199 N.C. App. 572, 577, 681 S.E.2d 858, 862 (2009). However, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274, 620 S.E.2d 873, 880 (2005).

18.     The Court may consider documents which are the subject of plaintiff's complaint and to which the complaint specifically refers, including the contract that

forms the subject matter of the action. *Oberlin Capital, L.P.*, 147 N.C. App. at 60, 554 S.E.2d at 847.

19.     Defendants seek dismissal of Plaintiff's claims for breach of fiduciary duty, constructive fraud, fraud, unjust enrichment, and unfair and deceptive trade practices. Plaintiff brings the claims for breach of fiduciary duty and constructive fraud both derivatively on behalf of the Chisum/Campagna LLCs and directly as individual claims. (ECF No. 28 at ¶¶ 68–78.) Plaintiff makes his fraud, unjust enrichment, and unfair and deceptive trade practices claims as individual claims. (ECF No. 28 at pp. 25, 27, 28.)

A. Breach of fiduciary duty and constructive fraud

20.     Plaintiff alleges derivative claims on behalf of the Chisum/Campagna LLCs and direct, individual claims for breach of fiduciary duty and constructive fraud against the Campagnas. (ECF No. 28 at ¶¶ 68–78.) In order to establish a claim for breach of fiduciary duty, plaintiff must show that: (1) defendant owed plaintiff a fiduciary duty; (2) defendant breached his fiduciary duty; and (3) the breach of fiduciary duty was a proximate cause of injury to plaintiff. *Farndale Co., LLC v. Gibellini*, 176 N.C. App. 60, 68, 628 S.E.2d 15, 20 (2006). "To establish constructive fraud, a plaintiff must show that defendant (1) owes plaintiff a fiduciary duty; (2) breached this fiduciary duty; and (3) sought to benefit himself in the transaction." *Crumley & Assoc., P.C. v. Charles Peed & Assocs., P.A.*, 219 N.C. App. 615, 620, 730 S.E.2d 763, 767 (2012). "Claims for breach of fiduciary duty and constructive fraud both require proof of an injury or harm proximately caused by the breach of

duty." *BDM Investments v. Lenhil, Inc.*, 2014 NCBC LEXIS 6, at \*29–30 (N.C. Super. Ct. Mar. 20, 2014) (citing *Jay Grp., Ltd. v. Glasgow*, 139 N.C. App. 595, 600-01, 534 S.E.2d 233, 237 (2000)). *See also Progress Point One-B Condo. Ass'n, Inc. v. Progress Point One Prop. Owners Ass'n*, 2015 NCBC LEXIS 22, at \*10 (N.C. Super. Ct. Mar. 2, 2015); *Green v. Freeman*, 367 N.C. 136, 141, 749 S.E.2d 262, 268 (2013) ("The first issue before us is whether there was sufficient evidence, as a matter of law, that [defendant] breached a fiduciary duty owed to plaintiffs, proximately causing injury to them."); *Estate of Smith by & Through Smith v. Underwood*, 127 N.C. App. 1, 10, 487 S.E.2d 807, 813 (1997) ("The elements of a constructive fraud claim are proof of circumstances, (1) which created the relation of trust and confidence, and (2) led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust *to the hurt of plaintiff*." (emphasis added; citation omitted)).

21.     Plaintiff alleges that Rocco and Richard acted as managers of the Chisum/Campagna LLCs and owed fiduciary duties to the LLCs. Pursuant to the North Carolina Limited Liability Company Act, a manager or officer of a limited liability company "shall discharge that person's duties (i) in good faith, (ii) with the care an ordinary prudent person in a like position would exercise under similar circumstances, and (iii) subject to the operating agreement, in a manner the manager believes to be in the best interests of the LLC." G.S. §§ 57D-3-21(a), 57D-3-23; *see Kaplan v. O.K. Techs., L.L.C.*, 196 N.C. App. 469, 473–74, 675 S.E.2d 133, 137 (2009) (holding that a manager owed a fiduciary duty to the limited liability

company). A manager, however, owes these duties to the company, and not to the members of the LLC. *Id.; see also RCJJ, LLC v. RCWIL Enters., LLC*, 2016 NCBC LEXIS 46, at \*22 (N.C. Super. Ct. June 20, 2016) (quoting *Kaplan*, 196 N.C. App. at 474, 675 S.E.2d at 137).

22. In the Amended Complaint, Plaintiff alleges that the Campagnas breached fiduciary duties to the Chisum/Campagna LLCs[3] by:

a. "Engaging in sham capital calls . . . ;

b. Improperly attempting to amend the Operating Agreements [of Judges Road, CCH, and Parkway], purporting to enact the amendments even though [the Campagnas] knew [the amendments to be] invalid, and improperly declaring that Mr. Chisum was no longer a member of the Chisum/Campagna LLCs;

c. Generally attempting to freeze Mr. Chisum out of the LLCs;

d. Improperly funneling money and misappropriating corporate opportunities from one or more of the Chisum/Campagna LLCs to other of the Chisum/Campagna LLCs and/or to themselves or other entities owned or controlled by them;

e. Selling assets belonging to one or more of the Chisum/Campagna LLC's and diverting the proceeds from those sales to other of the Chisum/Campagna LLCs and/or to themselves or entities owned or controlled by them; . . . ."

(ECF No. 28 at ¶ 71 (a)–(e).) Plaintiff relies on the same allegations in support of his claims for constructive fraud. (ECF No. 28 at ¶ 75.) The Court will first consider

---

[3] Plaintiff also alleges that the Campagnas breached fiduciary duties owed directly to Plaintiff. In his response brief in opposition to the Motion, however, Plaintiff concedes that Rocco and Richard owed fiduciary duties to the Chisum/Campagna LLCs, but did not owe Plaintiff a fiduciary duty as *members* of the Chisum/Campagna LLCs, either separately or acting together to comprise a majority of the membership interests. (ECF No. 88 at p. 4.)

Plaintiff's derivative claims, and then separately his direct claims, for breach of fiduciary duty and constructive fraud.

## i. Derivative claims

23. Generally, shareholders do not have standing to pursue individual causes of action for wrongs or injuries to the corporation. *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 658, 488 S.E.2d 215, 219 (1997); *Corwin v. British Am. Tobacco PLC*, No. COA15-1334, 796 S.E.2d 324, 338, 2016 N.C. App. LEXIS 1320, at *37–39 (N.C. Ct. App. Dec. 20, 2016). Under North Carolina law, members of an LLC are treated like corporate shareholders and managers are similar to directors. *Kaplan*, 196 N.C. App. at 473–74, 675 S.E.2d at 137. Under certain statutorily prescribed circumstances, however, a member may be permitted to raise claims belonging to a limited liability company derivatively on the company's behalf. G.S. § 57D-8-01. "A 'derivative proceeding' is a civil action brought . . . 'in the right of' a corporation . . . while an individual action is . . . [brought] to enforce a right which belongs to [plaintiff] personally." *Morris v. Thomas*, 161 N.C. App. 680, 684, 589 S.E.2d 419, 422 (2003) (quoting *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 395, 537 S.E.2d 248, 253 (2000)). The purpose of derivative claims is to allow shareholders/LLC members to assert the rights of the harmed corporation/LLC, and recovery in such actions flows to the corporation/LLC, not to the individual shareholder. *Green*, 367 N.C. at 141–42, 749 S.E.2d at 268.

24. Plaintiff purports to bring the claims for breach of fiduciary duty and constructive fraud derivatively on behalf of the Chisum/Campagna LLCs. Plaintiff

alleges that he has fulfilled the requirements for bringing a derivative action under the Limited Liability Company Act, § 57D-8-01. (ECF No. 28 at ¶ 67.) Defendants do not argue that Plaintiff lacks standing to bring derivative claims. Instead, Defendants contend that the derivative claims must fail because (i) the allegations in paragraph 71(a) do not state a claim for breach of the Campagnas' duties as managers because the Operating Agreements for Judges Road and CCH required a majority of membership interests to approve the capital calls, and the Operating Agreement for Parkway required a majority of the members, and not managers, to request the capital calls, (ii) the allegations in paragraphs 71(b) and (c) fail to allege any injury to the LLCs, and (iii) Plaintiffs have not alleged to which of the LLCs the Campagnas breached fiduciary duties. (ECF No. 49.1 at pp. 7–8.)

25.    Plaintiff alleges that the Campagnas made "sham" capital calls for Judges Road and CCH, and thereby breached their fiduciary duties to those LLCs. The Operating Agreements for both LLCs authorize "the Managers" to make requests for additional capital contributions from the members. That request must be approved by a "Majority in Interest of the Members" in order for the capital call to be made. (ECF No. 28, Ex. A at ¶ 8(b).) Defendants contend that any capital calls made for Judges Road and CCH were merely the exercise of the Campagnas' rights as members, and not as managers. Defendants argue that because members do not owe fiduciary duties to one another, Plaintiff fails to state claims for breaches of fiduciary duties based on capital calls made for Judges Road and CCH. (ECF No. 28 at p. 7.)

26. The Court is not persuaded by Defendants' argument. The Judges Road and CCH Operating Agreements both place the authority for requesting additional capital contributions from members, the necessary prerequisite to making a capital call, in the hands of the managers. The Campagnas would have to exercise managerial authority in order for the capital call to occur. The exercise of managerial authority and managerial discretion implicates the Campagnas' fiduciary duties to the LLCs. The fact that a request for additional capital required the additional approval of the majority in interest of the membership did not relieve the Campagnas of their fiduciary duties as managers.

27. The allegations regarding the capital calls, however, suffer from a more fundamental flaw. Despite the use of the word "sham," Plaintiff actually alleges only that the Campagnas requested additional capital from the members at times that Judges Road and CCH may not have needed the capital for specific or immediate business reasons. Plaintiff does not allege, or explain in his briefing, how requesting the additional capital contributions breached duties owed, or caused injury, to the Chisum/Campagna LLCs. At worst, the capital calls provided Judges Road and CCH with additional funds. Without an injury proximately caused by a breached fiduciary duty, Judges Road and CCH have no claims for breach of fiduciary duty against the Campagnas based on the capital calls and, consequently, Plaintiff cannot maintain derivative claims for breach of fiduciary duty or constructive fraud on behalf of Judges Road and CCH.

28.     With regard to Plaintiff's claim that the Campagnas breached fiduciary duties by making capital calls for Parkway, the Operating Agreement for Parkway does not permit managers to request a capital call, but instead requires a majority vote of the members to request a capital call. (ECF No. 28, Ex. C at § 7.1(b).) To the extent the Campagnas made capital calls for Parkway, they were acting only as members, and not as managers. Members do not owe fiduciary duties to an LLC. *Kaplan*, 196 N.C. App. at 473, 675 S.E.2d at 137 (2009) ("Members of a limited liability company are like shareholders in a corporation in that members do not owe a fiduciary duty to each other or to the company."). Parkway has no claim for breach of fiduciary duty against the Campagnas acting as members, and Plaintiff's attempt to make derivative claims for Parkway based on capital calls for which the Campagnas voted as members must fail.

29.     Similarly, Plaintiff's claim that the Campagnas improperly attempted to amend the Operating Agreements of the Chisum/Campagna LLCs does not allege a basis for a claim belonging to the LLCs. The Operating Agreements each permitted amendment only by unanimous action of the members. (ECF No. 28, Ex. A at § 12.5; Ex. B at § 12.5; Ex. C at § 11.5.) Since the Campagnas did not owe fiduciary duties to the Chisum/Campagna LLCs as members, the LLCs have no claim for breach of fiduciary duty or constructive fraud against the Campagnas. Plaintiff's attempt to raise derivative claims for the Chisum/Campagna LLCs based on the attempt to amend the Operating Agreements must fail.

30. Finally, Plaintiff alleges that the Campagnas breached their fiduciary duties as managers of the Chisum/Campagna LLCs by "attempting to freeze [Plaintiff] out of the LLCs." (ECF No. 28 at ¶ 71(c).) Plaintiff does not allege that the Campagnas' attempts to freeze him out caused any injury to the LLCs, and the facts do not support Plaintiff's allegation of a breach of a fiduciary duty owed by the Campagnas to the Chisum/Campagna LLCs.

31. Based on the foregoing, Defendants' Motion pursuant to Rule 12(b)(6) to dismiss Plaintiff's derivative claims against the Campagnas for breach of fiduciary duty and constructive fraud based on the allegations in paragraphs 71(a), (b), and (c) of the Amended Complaint should be GRANTED.

32. Defendants do not argue that the allegations that the Campagnas funneled money and misappropriated corporate opportunities from the Chisum/Campagna LLCs to themselves, and sold the LLCs' assets and diverted the proceeds to themselves, do not allege breaches of fiduciary duty or constructive fraud or cannot be maintained as derivative claims by Plaintiff. Instead, Defendants argue only that the allegations fail to state claims because Plaintiff has not specified to which of the Chisum/Campagna LLCs each of the allegations apply. (ECF No. 49.1 at pp. 7–8.) Defendants provide no authority in support of their argument that such specificity is required in pleading claims for breach of fiduciary duty or constructive fraud. Accordingly, Defendants' Motion to Dismiss Plaintiff's derivative claims for breach of fiduciary duty and constructive fraud with regard to the allegations in paragraphs 71(d) and (e) should be DENIED.

ii. Direct claims

33. Plaintiff also attempts to state direct, individual claims for breach of fiduciary duty and constructive fraud against the Campagnas. Generally, a shareholder of a corporation "cannot pursue individual causes of action for wrongs or injuries to the corporation." *Miller v. Burlington Chem. Co., LLC*, 2017 NCBC LEXIS 6, at \*13 (N.C. Super. Ct. Jan. 27, 2017) (citing *Barger*, 346 N.C. at 658, 488 S.E.2d at 219). There are, however, "two exceptions to the general rule, . . . (1) where there is a special duty, such as a contractual duty, between the wrongdoer and the shareholder, and (2) where the shareholder suffered an injury separate and distinct from that suffered by other shareholders [or the corporation]." *Id.* ("*Barger* exceptions"). The *Barger* exceptions offer litigants who have suffered an injury in their individual capacity as a result of the actions of a third party (usually an officer or director of the corporation) two different, independent paths for maintaining a direct claim against the corporation. *See, e.g., Green*, 367 N.C. at 143, 749 S.E.2d at 269 ("Thus, we next consider whether plaintiffs can recover under the special duty **or** unique personal injury exception." (emphasis added)). The *Barger* exceptions have been applied to members of LLCs. *See, e.g., Dawson v. Atlanta Design Assocs., Inc.*, 144 N.C. App. 716, 719–20, 551 S.E.2d 877, 879–80 (2001) (applying the *Barger* exceptions to limited liability companies); *Levin v. Jacobson*, 2015 NCBC LEXIS 111, at \*13–15 n.4 (N.C. Super. Ct. Dec. 7, 2015) ("Although it originally discussed fiduciary duties in the context of corporations, *Barger* and its progeny apply equally

to LLCs."); *Miller*, 2017 NCBC LEXIS 6, at *12–14 (applying the *Barger* standard to claims brought by LLC members).

34.     Plaintiff does not claim that the Campagnas owed him a special duty. Instead, Plaintiff argues that he may properly make direct, individual claims against the Campagnas because the breaches of their duties to the Chisum/Campagna LLCs caused injuries personal to Plaintiff and separate from any injury suffered by the other members or the LLCs. (ECF No. 88 at p. 4 ("Here, [Plaintiff] clearly suffered an injury separate and distinct from that suffered by other members from [the Campagnas'] breach of fiduciary duty to the LLCs.").)

35.     Significantly, the exception under which Plaintiff attempts to bring his direct claims permits a shareholder to "sue for **injuries to his corporation**" where "the injury suffered by the shareholder is separate and distinct from **the injury sustained by the other shareholders or the corporation itself.**" *Barger*, 346 N.C. at 658–59, 488 S.E.2d at 220 (emphasis added). In other words, to sustain an individual claim under the separate injury exception, it is essential that Plaintiff allege that the Chisum/Campagna LLCs or the other members of the LLCs suffered an injury from the Campagnas' breaches of fiduciary duties that would give rise to a claim by the LLCs. *See Piazza v. Kirkbride*, 785 S.E.2d 695, 713, 2016 N.C. App. LEXIS 371, at *51 (2016) ("Here, the plaintiffs' claim is not brought as a derivative action, but is brought because they suffered individual injury distinct *from the injury sustained by the corporation itself.*" (emphasis added)).

36. As discussed *supra*, the allegations of the "sham" capital calls, the attempt to amend the Operating Agreements, and the attempts to freeze Plaintiff out of the LLCs do not establish that the Chisum/Campagna LLCs suffered any injury that was proximately caused by any breached fiduciary duties the Campagnas owed to the Chisum/Campagna LLCs. The second *Barger* exception requires plaintiff to show an injury separate and distinct from the injury suffered by the corporation itself. *See Barger*, 346 N.C. at 658–59, 488 S.E.2d at 220. Since the Chisum/Campagna LLCs have no claims for breach of fiduciary duty or constructive fraud against the Campagnas, Plaintiff does not have standing to maintain direct, individual claims for breach of fiduciary duties or constructive fraud under the second *Barger* exception. Defendants' Motion to dismiss Plaintiff's direct, individual claims for breach of fiduciary duty and constructive fraud based on the allegations in paragraphs 71(a), (b) and (c) of the Amended Complaint should be GRANTED.

37. Plaintiff also makes direct, individual claims for breach of fiduciary duty and constructive fraud based on the allegations that the Campagnas diverted money and misappropriated corporate opportunities from the Chisum/Campagna LLCs to themselves, and that the Campagnas diverted proceeds from the sale of LLC assets to themselves and their separately-owned LLCs. (ECF No. 28 at ¶ 71(d)–(e).) Plaintiff has sufficiently alleged that the Campagnas' conduct breached fiduciary duties owed to the Chisum/Campagna LLCs and that the breaches would have proximately harmed the Chisum/Campagna LLCs in the form of lost funds, assets, and revenues, and a diminution in the value of the LLCs. The harm to the Chisum/Campagna LLCs,

however, would have resulted in injuries to the interests of all of the members of the Chisum/Campagna LLCs. Plaintiff has not alleged how he was separately or distinctly injured in a way different than the other members. To the contrary, the injury Plaintiff suffered from the alleged breaches of fiduciary duties is exactly the type for which an individual shareholder or member may not pursue a direct claim. *See, e.g., Barger*, 346 N.C. at 659, 488 S.E.2d at 220 ("The only injury plaintiffs as shareholders allege is the diminution or destruction of the value of their shares as the result of defendants' [misconduct]. This is precisely the injury suffered by the corporation itself."); *Raymond James Capital Partners, L.P. v. Hayes*, 789 S.E.2d 695, 702–03, 2016 N.C. App. LEXIS 819, at *16–17 (N.C. Ct. App. Aug. 2, 2016) ("[P]laintiff's injury for reduced payments is the functional equivalent of a claim for diminution of the value of shares held by all of [the corporation's] shareholders. . . . Thus, plaintiff has failed to allege any injury that is separate and distinct from the harm suffered by . . . all of [the corporation's] shareholders collectively."); *Energy Investors Fund, L.P. v. Metric Constructors, Inc.*, 351 N.C. 331, 336, 525 S.E.2d 441, 444 (2000) ("[W]e find that the complaint shows [plaintiff's] injury is the loss of its investment, which is identical to the injury suffered by the other limited partners and by the partnership as a whole."). Plaintiff has alleged that the Campagnas benefitted from their activities as alleged in paragraphs 71(d) and (e) and that Plaintiff did not similarly benefit, but Plaintiff has not alleged that Plaintiff was separately or distinctly injured. Without alleging a separate and distinct injury, Plaintiff does not

have standing to maintain direct claims for breach of fiduciary duty under the second *Barger* exception for the allegations in paragraphs 71(d) and (e).

38.     Accordingly, Defendant's Motion to dismiss Plaintiff's direct claims for breach of fiduciary duty and constructive fraud based on the allegations in paragraphs 71(d) and (e) of the Amended Complaint should be GRANTED.

B. <u>Fraud</u>

39.     Plaintiff alleges direct claims for fraud in the inducement against the Campagnas based on the alleged "sham" capital calls. (ECF No. 28 at ¶¶ 128–36.) Plaintiff alleges that "[t]he Campagnas specifically represented . . . that the capital calls . . . were necessary for operation of the Chisum/Campagna LLCs" and "with knowledge that the . . . capital calls were, in fact, not necessary . . . and served no legitimate business purpose." (ECF No. 28 at ¶¶ 130–31.) Plaintiff alleges the "capital calls were solely made for the unlawful purpose of forcing [Plaintiff] to assign a portion of his ownership interests to the Campagnas." (ECF No. 28 at ¶ 132.)

40.     The essential elements of fraud are: "(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Terry v. Terry*, 302 N.C. 77, 83, 273 S.E.2d 674, 677 (1981). Allegations of fraud must be pled "with particularity." Rule 9(b); *Terry*, 302 N.C. at 85, 273 S.E.2d at 678. "The particularity required by the rule generally encompasses the *time, place and contents of the fraudulent representation, the identity of the person making the representation and what was obtained by the fraudulent acts or representations*. The

particularity required cannot be satisfied by using conclusory language." *Id.* (emphasis in original). Additionally, the deceived party must have reasonably relied on the allegedly false representations. *Forbis v. Neal*, 361 N.C. 519, 527, 649 S.E.2d 382, 387 (2007).

41. As an initial matter, Plaintiff concedes that he did not know about the July 2012 capital call, and does not allege that any representations were made to him regarding that capital call. Without knowledge of the capital call or any allegations that a misrepresentation was made regarding the capital call, Plaintiff cannot maintain a fraud claim based on that capital call. Defendant's Motion to dismiss the claim for fraud based on the July 2012 capital call is GRANTED.

42. With regard to the fraud claims arising from the other capital calls, Plaintiff alleges that "upon information and belief, there was not a legitimate business purpose for the capital calls." (ECF No. 28 at ¶¶ 29, 35.) Plaintiff does not allege that the Campagnas made any specific misrepresentations as to the reasons for the capital calls other than that they "were necessary for the operation of the Chisum/Campagna LLCs." (ECF No. 28 at ¶ 129.) Plaintiff instead alleges that he "trusted that [Richard] Campagna was operating in good faith . . . when directing the capital calls," and that Plaintiff "had no reason to believe that [Richard] Campagna would direct a sham capital call." (ECF No. 28 at ¶ 31.)

43. Defendants argue that the fraud in the inducement claim must fail because Plaintiff does not allege he was denied the opportunity to discover the true facts regarding the financial conditions of the Chisum/Campagna LLCs, or that he

could not have discovered the facts through such inspection. (ECF No. 49.1 at pp. 8–10.) Defendants contend that Plaintiff could have inspected the corporate books and records, and absent an allegation that he was denied such an opportunity, Plaintiff has not sufficiently alleged that he reasonably relied on the misrepresentations. (*Id.*)

44. It is well established that in alleging fraud, if "the party relying on the false or misleading representation could have discovered the truth upon inquiry, *the complaint must allege* that he was denied the opportunity to investigate or that he could not have learned the true facts by exercise of reasonable diligence." *Rider v. Aderhold*, 2013 WL 3776961, at *12–13, 228 N.C. App. 360, 748 S.E.2d 775 (N.C. Ct. App. July 16, 2013) (emphasis added; quoting *Oberlin Capital, L.P.*, 147 N.C. App. at 59, 554 S.E.2d at 846 (2001)). *See also Hudson-Cole Dev. Corp. v. Beemer,* 132 N.C. App. 341, 346, 511 S.E.2d 309, 313 (1999); *Jackson v. Minn. Life Ins. Co.*, No. 5:16-CV-111-D, 2017 U.S. Dist. LEXIS 32674, at *36–37 (E.D.N.C. Mar. 8, 2017) (holding that "plaintiffs fail to state a claim for fraud because '[w]here a plaintiff could have discovered the truth about the misrepresentation upon inquiry, the complaint must allege that the plaintiff was denied the opportunity to investigate or could not have learned the true facts by exercise of reasonable diligence in order to survive a motion to dismiss'" (citation omitted)). This requirement of reasonable diligence is only excused when the party making the misrepresentation or concealment is in a fiduciary or confidential relationship with the plaintiff. *Forbis v. Neal*, 361 N.C. 519, 525, 649 S.E.2d 382, 386 (2007); *Bennett v. Anson Bank & Trust Co.*, 265 N.C. 148,

156, 143 S.E.2d 312, 318 (1965). As discussed *supra*, the Campagnas did not owe fiduciary duties to Plaintiff individually.

45. Plaintiff has not alleged that he was prevented from discovering the actual financial conditions of the Chisum/Campagna LLCs through the exercise of reasonable diligence. Plaintiff was a member of the Chisum/Campagna LLCs and had a right to inspect the books and records of the LLCs under the Operating Agreements. (ECF No. 28, Ex. A at § 9.8; ECF No. 28, Ex. B at § 9.8; ECF No. 28, Ex. C § 8.6.) Plaintiff also had a statutory right, pursuant to G.S. § 57D-3-04, to inspect the books and records and to "[i]nformation from which the status of the business and the financial condition of the LLC[s] may be ascertained." Plaintiff has not alleged that he asked to inspect the books and records at any time before spring 2016, and has not alleged he was prevented from doing so. There also is no allegation that the LLCs' books and records were not accurate or would not have revealed the actual financial conditions of the LLCs at the time the Campagnas made the capital calls.

46. Plaintiff concedes that he does not allege he was denied the opportunity to investigate, but contends that his general allegation that the Campagnas controlled the LLCs and operated them without his input is sufficient to establish that Plaintiff was prevented from discovering the truth about the capital calls. (ECF No. 88, pp. 7–8.) These allegations are not adequate to meet Plaintiff's pleading burden.

47. Defendants also contend that Plaintiff did not plead his claim for fraud with sufficient particularity as required by Rule 9(b). The Court agrees with

Defendants. With regard to the 2007 capital calls, Plaintiff does not specify when or where the misrepresentations took place, alleging only that they occurred "[i]n or around 2007," and has not alleged the contents of the misrepresentations. (ECF No. 28 at ¶ 26.) While Plaintiff alleges that another capital call was made on October 4, 2010 by the Campagnas, he does not allege the content of any alleged misrepresentations. (ECF No. 28 at ¶ 56.) These allegations fall short of the particularity needed to plead fraud. *Terry*, 302 N.C. at 85, 273 S.E.2d at 678.

48.     For these reasons, Defendants' Motion to dismiss Plaintiff's claims for fraud should be GRANTED.

## C. Unjust Enrichment

49.     Plaintiff alleges that the Campagnas and the Chisum/Campagna LLCs have been unjustly enriched by the Campagnas' misconduct. (ECF No. 28 at ¶¶ 142–46.) A claim for unjust enrichment "is neither in tort nor contract but is described as a claim in quasi contract or a contract implied in law." *Booe v. Shadrick*, 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988). "The general rule of unjust enrichment is that where services are rendered and expenditures made by one party to or for the benefit of another, without an express contract to pay, the law will imply a promise to pay a fair compensation therefor." *Atlantic C. L. R. Co. v. State Highway Comm'n*, 268 N.C. 92, 95–96, 150 S.E.2d 70, 73 (1966).

50.     In North Carolina, to recover on a claim of unjust enrichment, Plaintiff must prove: (1) that it conferred a benefit on another party; (2) that the other party consciously accepted the benefit; and (3) that the benefit was not conferred

gratuitously or by an interference in the affairs of the other party. *Southeastern Shelter Corp. v. BTU, Inc.*, 154 N.C. App. 321, 330, 572 S.E.2d 200, 206 (2002). "The doctrine of unjust enrichment was devised by equity to exact the return of, or payment for, benefits received under circumstances where it would be unfair for the recipient to retain them without the contributor being repaid or compensated." *Collins v. Davis*, 68 N.C. App. 588, 591, 315 S.E.2d 759, 761 (1984).

51. Plaintiff fails to allege a claim for unjust enrichment. He does not allege that he conferred any benefit on the Campagnas or the Chisum/Campagna LLCs, but rather only that the Campagnas "received" or "wrongfully retained" benefits from their alleged misconduct. (ECF No. 28 at ¶¶ 143–144.) Plaintiff has not alleged or otherwise explained how any of the facts support an allegation that he conferred a benefit on the Campagnas or the Chisum/Campagna LLCs, or how the benefits received by the Campagnas or the Chisum/Campagna LLCs resulted from an implied contract.

52. Accordingly, Defendants' Motion to dismiss Plaintiff's claim for unjust enrichment is GRANTED.

D. Unfair and Deceptive Trade Practices

53. Plaintiff makes an individual claim for unfair and deceptive trade practices against the Campagnas. (ECF No. 28 at ¶¶ 147–52.) Plaintiff bases this claim on the Campagnas' alleged fraudulent capital calls, improper attempts to amend the Chisum/Campagna LLCs' operating agreements, conversion of Plaintiff's ownership interests in the Chisum/Campagna LLCs, failure to pay pro-rata

distributions, and diversion of assets and misappropriation of corporate opportunities from the Chisum/Campagna LLCs to LLCs under the exclusive ownership and control of the Campagnas. (ECF No. 28 at ¶ 150.)

54.     "To establish a prima facie case of unfair and deceptive trade practices, a plaintiff must show that (1) the defendant committed an unfair or deceptive act or practice, (2) the act was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *White v. Consol. Planning, Inc.*, 166 N.C. App. 283, 303, 603 S.E.2d 147, 161 (2004).

55.     "Plaintiff[s] must first establish that [D]efendants' conduct was 'in or affecting commerce' before the question of unfairness or deception arises." *HAJMM Co. v. House of Raeford Farms, Inc.*, 328 N.C. 578, 592, 403 S.E.2d 483, 492 (1991). The phrase "'business activities' [ ] connotes the manner in which businesses conduct their regular, day-to-day activities, or affairs, such as the purchase and sale of goods, or whatever other activities the business regularly engages in and for which it is organized." *White v. Thompson*, 364 N.C. 47, 52, 691 S.E.2d 676, 679 (2010); *Alexander v. Alexander*, 792 S.E.2d 901, 904, 2016 N.C. App. LEXIS 1252, at *7 (N.C. Ct. App. Dec. 6, 2016). The Court determines whether the alleged deceptive acts are "in or affecting commerce" as a matter of law. *See Walker v. Fleetwood Homes of N.C., Inc.*, 362 N.C. 63, 71, 653 S.E.2d 393, 399 (2007); *Urquhart v. Trenkelbach*, 2017 NCBC LEXIS 12, at *10 (N.C. Super. Ct. Feb. 8, 2017)

56.     Defendants argue that the Campagnas' conduct does not violate the UDTPA because it is entirely internal to the Chisum/Campagna LLCs and is not "in

or affecting commerce." (ECF No. 49.1 at p. 13.) "With the [UDTPA] our General Assembly sought to prohibit unfair or deceptive conduct in interactions between different market participants. The General Assembly did not intend for the Act to regulate purely internal business operations." *White*, 364 N.C. at 47–48, 691 S.E.2d at 676 (holding that conduct between partners in a business, even when the conduct involves multiple business entities owned by the partners, is nonetheless internal to a single market participant). "The [UDTPA] is not focused on the internal conduct of individuals within a single market participant, that is, within a single business. . . . As a result, any unfair or deceptive conduct contained solely within a single business is not covered by the Act." *White*, 364 N.C. at 53, 691 S.E.2d at 680; *see also Weaver Inv. Co. v. Pressly Dev. Assoc.*, 234 N.C. App. 645, 654, 760 S.E.2d 755, 761 (2014) (dismissing plaintiff's UDTPA claim because "defendants' misconduct within the confines of the partnership was not 'in or affecting commerce'"); *Polyquest, Inc. v. Vestar Corp., LLC*, 2014 U.S. Dist. LEXIS 14905, at *34–35 (E.D.N.C. Feb. 6, 2014) (dismissing claim brought by one company against another engaged in a joint venture, holding "although defendants' actions were not confined to the internal operations of a 'single business,' their actions were confined to the internal operation of a 'single market participant,' the joint venture"); *McKee v. James*, 2014 NCBC LEXIS 74, at *42 (N.C. Super. Ct. Dec. 31, 2014) (dismissing plaintiff's UDTPA claims between members of an LLC because "the undisputed evidence of record does not reveal a dispute between McKee Craft and another business or consumers at large, but rather a dispute between Plaintiffs and James as co-owners of McKee Craft").

57. The Court concludes that Plaintiff's allegations that the Campagnas made "sham" capital calls, attempted to amend Operating Agreements, and converted Plaintiff's membership interests are conduct that was purely internal to the Chisum/Campagna LLCs. The alleged conduct had no impact on other market participants and was not "in or affecting commerce," and cannot support a UDTPA claim. *Urquhart*, 2017 NCBC LEXIS 12, at *12–13.

58. Plaintiff also alleges that the Campagnas committed unfair trade practices by diverting assets and corporate opportunities from the Chisum/Campagna LLCs to the other Campagna-controlled LLCs or to themselves and by selling LLC assets and diverting the proceeds to themselves. (ECF No. 28 at ¶ 150.) Plaintiff argues that the Campagnas breached their fiduciary duties to the Chisum/Campagna LLCs and engaged in self-dealing "by transferring assets of the Chisum/Campagna LLCs to other entities they owned and controlled for little to no value without disclosing such transfers to [Plaintiff]." (ECF No. 88 at p. 11.)

59. Plaintiff first argues that since the Campagnas diverted and sold assets to third-party LLCs, the conduct was between different market participants and, therefore, "in or affecting commerce." Plaintiff, however, does not allege that the Campagnas directed any unfair or deceptive conduct towards or in their interactions with the third-party LLCs, but only that the diversion of assets was a breach of the Campagnas' duties to the Chisum/Campagna LLCs. *White*, 364 N.C. at 47–48, 691 S.E.2d at 676 (UDTPA prohibits unfair or deceptive conduct in "interactions between different market participants."). In other words, any impact the conduct had on other

"market participants" was incidental to the alleged unfair conduct that took place solely within the Chisum/Campagna LLCs. *Alexander*, 792 S.E.2d at 905, 2016 N.C. App. LEXIS 1252, at *10–11 (holding that a majority shareholder's "misappropriation of [corporate] funds through payments made directly to himself and his family members as well as payments made to cover some of his own personal expenses" including "'land rent' in connection with the storage of the company's vehicles . . . are more properly classified as the misappropriation of corporate funds within a single entity rather than commercial transactions between separate market participants 'in or affecting commerce'"); *Bandy v. Gibson*, 2017 NCBC LEXIS 66, at *21–22 (N.C. Super. Ct. July 26, 2017) (stating that the allegation that defendant-shareholder diverted corporate funds to her husband and her husband's company "was incidental to the alleged unfair conduct that took place solely within [the corporation]" and was not "in or affecting commerce"); *Urquhart*, 2017 NCBC LEXIS 12, at *13 ("[E]ven if [defendant] wrongfully diverted [plaintiff corporations] funds, that act was not in or affecting commerce, because the alleged activity was confined to acts of an owner and one single entity.").

60. In addition, any claim for violation of the UDTPA based on the Campagnas' breaches of their duties to the Chisum/Campagna LLCs belongs to the LLCs, not Plaintiff. Plaintiff, however, brought the UDTPA claim individually and not derivatively. Plaintiff has not alleged facts suggesting that the Campagnas' diversion of assets and corporate opportunities was a breach of a special duty owed to Plaintiff, or that the diversion harmed Plaintiff in a manner "separate and distinct"

from the harm to the Chisum/Campagna LLCs, *Barger*, 346 N.C. at 658, 488 S.E.2d at 219, and therefore Plaintiff's UDTPA claim cannot be maintained individually. Defendants' Motion to dismiss Plaintiff's individual claim against the Campagnas for violation of the UDTPA should be GRANTED.

CONCLUSION

THEREFORE, IT IS ORDERED that Defendants' Motion to Dismiss Plaintiff's Amended Complaint is GRANTED, in part, and DENIED, in part, as follows:

1. Defendants' Motion to Dismiss Plaintiff's derivative claim for breach of fiduciary duty based on the allegations in paragraphs 71(a), 71(b), 71(c), and 71(f) is GRANTED.

2. Defendants' Motion to Dismiss Plaintiff's derivative claim for breach of fiduciary duty based on the allegations in paragraphs 71(d) and 71(e) is DENIED.

3. Defendants' Motion to Dismiss Plaintiff's direct claims for breach of fiduciary duty is GRANTED.

4. Defendants' Motion to Dismiss Plaintiff's direct claims for constructive fraud is GRANTED.

5. Defendants' Motion to Dismiss Plaintiff's derivative claims for constructive fraud based on the allegations in paragraphs 71(a), 71(b), 71(c), and 71(f) is GRANTED.

6. Defendants' Motion to Dismiss Plaintiff's derivative claims for constructive fraud based on the allegations in paragraphs 71(d) and 71(e) is DENIED.

7. Defendants' Motion to Dismiss Plaintiff's claims for fraud is GRANTED.

8. Defendants' Motion to Dismiss Plaintiff's claims for unjust enrichment is GRANTED.

9. Defendants' Motion to Dismiss Plaintiff's claims for unfair and deceptive trade practices is GRANTED.

10. Except as expressly granted above, Defendants' Motion to Dismiss is DENIED.

This, the 7th day of November, 2017.

              /s/ Gregory P. McGuire
              Gregory P. McGuire
              Special Superior Court Judge for
              Complex Business Cases